UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GRANT MOLLA, on behalf of the
Gerdau Ameristeel US 401(k)
Retirement Plan, himself, and all others
similarly situated,

    Plaintiff,

v.                                          Case No. 8:22-cv-2094-VMC-SPF

GERDAU AMERISTEEL US, INC.,
and the GERDAU BENEFITS PLANS
ADMINISTRATIVE COMMITTEE,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter comes before on the Court on Defendants' Motion to Determine Standard of Review (Doc. 28), Defendants' Motion for Protective Order (Doc. 30), and the parties' request for a preliminary pretrial conference in their Case Management Report (Doc. 27). Plaintiff filed responses in opposition to each of Defendants' motions (Docs. 38, 40), and with leave of Court, Defendants filed replies (Docs. 46, 47). The district judge referred these matters to the undersigned for the issuance of a report and recommendation (Doc. 31). Upon consideration, the Court finds that Defendants' motions should be DENIED.

    **I.**    **Background**

Plaintiff initiated this action against Defendants Gerdau Ameristeel US, Inc. ("Gerdau") and the Gerdau Benefits Plans Administrative Committee (the "Committee") on behalf of all participants in the Gerdau Ameristeel US 401(k) Retirement Plan (the "Plan") to seek relief under the Employee Retirement Income Security Act, 29 U.S.C. §

1001, *et seq.* ("ERISA") for alleged mismanagement of the Plan constituting a breach of fiduciary duty (Doc. 1). In particular, Plaintiff alleges that Defendants caused the Plan to pay unreasonable and excessive fees for recordkeeping and other administrative services (*Id.* at ¶ 8).

Prior to filing his Complaint, Plaintiff failed to exhaust administrative remedies under the Plan. As a result, the parties jointly moved for a stay (Doc. 12), which the Court granted (Doc. 13). The Committee then investigated, considered, and denied Plaintiff's claim. The denial of Plaintiff's claim is memorialized in an eighteen-page Claim Denial Letter which reflects that the Committee gathered extensive information in the course of investigating and considering Plaintiff's claim (Doc. 28-3). Defendants point out that the administrative record includes 89 exhibits and 188 additional supporting documents (*Id.*). Plaintiff then appealed the denial, although Plaintiff neither submitted nor requested any additional evidence (Doc. 28-4). The Committee further investigated Plaintiff's claims, but ultimately denied the appeal in a ten-page letter that included 10 additional exhibits (Doc. 28-5). The appeal denial letter concluded the administrative process required by the Plan.

On November 23, 2023, the parties jointly moved to lift the stay and proceed with this litigation (Doc. 23). After the Court lifted the stay, Plaintiff served Defendants with merits discovery. Defendants argue that this is improper as this Court's review of Plaintiff's claim is limited to the administrative record. As such, Defendants move for a protective order (Doc. 30) and to determine the standard of review (Doc. 28).

II. **The Plan**

The following provisions of the Plan are relevant for the purposes of this Court's analysis:

2

      1.      The Committee is delegated authority through the Administrative Committee Mandate, which provides in part that:

> The Board delegated to the Administrative Committee the following powers, duties and responsibilities with respect to all Plans sponsored by (i) Gerdau Ameristeel or any of its wholly-owned subsidiaries, and (ii) with the approval of the Board, affiliates of Gerdau Ameristeel: […]
>
> (b)    to perform any duty or responsibility delegated, and to have any power granted, by any such Plan or policy to Gerdau Ameristeel or other sponsoring employer as "Plan Administrator" or similar position respect to day-to-day administrative functions of the Plans (excluding, however, any duty, responsibility or power relating to the investment of Plan assets); […]
>
> (e)    to determine benefit claims and appeals when appropriate[.]

(Doc. 28-1 at 96).

      2.      Section 3.6 of the Plan provides the Committee certain discretionary authority:

> The Administrative Committee shall have complete control over the administration of the Plan, with all powers necessary to enable it to carry out its duties in that respect. In connection with its administration of the Plan, the Administrative Committee shall have the power to exercise discretion, to exclusively interpret the terms of the Plan, including the determination of eligibility for benefits and the amounts thereof and to carry out its provisions. Such discretionary determinations and interpretations shall be binding upon all Participants and others hereunder. Without limitation on the foregoing, the Administrative Committee shall have the following responsibilities and duties: […]
>
> (b)    to interpret the Plan, with its interpretation thereof in good faith to be final and conclusive, and to decide all other questions concerning the Plan;
>
> (f)    to determine benefit claims and appeals[.]

(*Id.* at 22–23).

      3.      Finally, Section 3.16 of the Plan contains the administrative claim and appeal procedures:

> (a)    Claims for benefits under the Plan may be made by a Participant or a

> Beneficiary (the "claimant") on forms supplied by the Plan Administrator. Written or electronic notice of the disposition of a claim shall be furnished to the claimant by the Plan Administrator within ninety (90) days after the application is filed with the Plan Administrator, unless special circumstances require an extension of time for processing, in which event action shall be taken as soon as possible, but not later than one hundred eighty (180) days after the application is filed with the Plan Administrator; and, in the event that no action has been taken within such ninety (90) or one hundred eighty (180) day period, the claim shall be deemed to be denied for the purposes of subsection (b). In the event that the claim is denied, the denial shall be written in a manner calculated to be understood by the claimant and shall include the specific reasons for the denial, specific references to pertinent Plan provisions on which the denial is based, a description of the material information, if any, necessary for the claimant to perfect the claim, an explanation of why such material information is necessary and an explanation of the claims review procedure.
>
> (b)     If a claim is denied (either in the form of a written denial or by the failure of the Plan Administrator, within the required time period, to notify the claimant of the action taken), a claimant or his duly authorized representative shall have sixty (60) days after the receipt of such denial to petition the Plan Administrator in writing for a full and fair review of the denial, during which time the claimant or his duly authorized representative shall have the right to review pertinent documents and to submit issues and comments in writing. The Plan Administrator shall promptly review the claim and shall make a decision not later than sixty (60) days after receipt of the request for review, unless special circumstances require an extension of time for processing, in which event a decision shall be rendered as soon as possible, but not later than one hundred twenty (120) days after the receipt of the request for review. If such an extension is required because of special circumstances, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension. The decision of the review shall be in writing and shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, with specific references to the Plan provisions on which the decision is based.
>
> (c)     A person may not bring an action pertaining to the Plan until he has exhausted his administrative claims and appeal remedies pursuant to subsections (a) and (b). If a person brings an action pertaining to a claim for benefits under the Plan, such claim must be filed with the court no later than one hundred eighty (180) days after the Plan Administrator's final denial of his claim for benefits.

(*Id.* at 25–26).

### III. ERISA Fiduciary Duty

"ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan and investing and disposing of its assets." *Perez v. Commodity Control Corp.*, No. 1:16-CV-20245-UU, 2016 WL 11638303, at *5 (S.D. Fla. May 4, 2016) (quoting *Herman v. NationsBank Tr. Co., (Ga.)*, 126 F.3d 1354, 1361 (11th Cir. 1997)). ERISA § 404(a)(1), codified at 29 U.S.C. § 1104(a)(1), sets forth these standards of fiduciary duty. That section states that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use[.]" 29 U.S.C. § 1104(a)(1). ERISA § 409(a) provides for liability for breaches of this duty of prudence, stating in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including the removal of such fiduciary.

29 U.S.C. § 1109(a); *see also* 29 U.S.C. § 1132(a)(2) (stating that a civil action may be brought by a "participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title").

To state a claim for breach of fiduciary duty under § 1109, a plaintiff must establish "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Stengl v. L3Harris Techs., Inc.*, No. 6:22-cv-572-PGB-LHP, 2023 WL 2633333, at *7 (M.D. Fla. Mar. 24, 2023) (quoting *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016)) (internal quotation marks omitted);

5

*Lopez v. Embry-Riddle Aeronautical Univ., Inc.*, No. 6:22-cv-1580-PGB-LHP, 2023 WL 7129858, at *6 (M.D. Fla. July 12, 2023). In addition to these requirements, a plaintiff must exhaust administrative remedies prior to bringing a claim in district court, even in actions alleging breach of the statutory duty of prudence. *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 n.6 (11th Cir. 2000) ("We apply this exhaustion requirement to both ERISA claims arising from the substantive provisions of the statute, and ERISA claims arising from an employment and/or pension plan agreement.").[1]

### IV. ERISA Standards of Review

ERISA itself does not provide a standard of review to be applied by courts in reviewing benefits decisions made at the administrative level. Regardless, courts have fashioned two possible options: (1) the arbitrary and capricious standard, which applies when the benefit plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," or (2) the de novo standard, which applies in the absence of such discretionary authority. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111, 117–19

---

[1] Outside of the Eleventh Circuit, most courts limit the exhaustion requirement to plan-based claims for "benefits" under ERISA and do not require plaintiffs to exhaust administrative remedies before bringing claims for violations of ERISA's statutory provisions. *See, e.g., Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017) ("We agree with the Third, Fourth, Fifth, Ninth, Tenth, and D.C. Circuits [and] hold that ERISA plan participants or beneficiaries do not need to exhaust internal remedial procedures before proceeding to federal court when they assert statutory violations of ERISA."); *see also Zipf v. AT&T Co.*, 799 F.2d 889, 891–92 (3d Cir. 1986) ("There is no suggestion that Congress meant for these internal remedial procedures to embrace Section 510 claims based on violations of ERISA's substantive guarantees. On the contrary, the legislative history suggests that the remedy for Section 510 discrimination was intended to be provided by the courts.") (citing *2 Legislative History of the Employee Retirement Income Security Act of 1974*, 1641–42 (1976) (remarks of Sens. Hartke and Javits)). As discussed *infra*, the distinction between plan-based claims for "benefits" and claims for violations of ERISA's statutory provisions nonetheless remains important in this jurisdiction.

(2008); *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355–56 (11th Cir. 2011). The applicable standard of review ultimately impacts the six-step analysis for reviewing an administrator's decision:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355. With this context in mind, the Court turns to Defendants' motions.

### V. Analysis

#### a. Motion to Determine Standard of Review

Defendants argue that the Court should apply the arbitrary and capricious standard of review to this action because (1) Plaintiff's claim is for "benefits" and Defendants' denial of Plaintiff's claim is a benefits determination; (2) the Plan grants the Committee discretionary authority to make benefits determinations; and (3) deferential review applies

7

to benefits determinations where the ERISA plan gives the administrator discretion to determine benefit claims.

Defendants argue that under the Eleventh Circuit's decision in *Lanfear v. Home Depot, Inc.*, an ERISA claim for breach of fiduciary duty is, by definition, a claim for benefits. 536 F.3d 1217, 1223 (11th Cir. 2008). In *Lanfear*, the Eleventh Circuit needed to determine whether former employees who had already received benefit payments (but complained that those payments were lower than they should have been as a result of alleged breaches of fiduciary duty) were plan participants with standing under ERISA to sue for breach of fiduciary duty. 536 F.3d at 1221–23. The court held that the former employees were seeking benefits, not damages, so they had standing to assert a claim under ERISA. *See id.* at 1223 ("A complaint for the decrease in value of a defined contribution account due to a breach of fiduciary duty is not for damages because it is limited to the difference between the benefits actually received and the benefits that would have been received if the plan management had fulfilled its statutory obligations."). At the same time, the former employees also argued that they did not need to exhaust administrative remedies because they were seeking damages, not benefits. *Id.* at 1224. The court found that this argument failed for two reasons: "First, as we explained in the previous section, the former employees' complaint is for benefits. Second, the plan provides an administrative remedy for a wide range of claims, including breach of fiduciary duty[.]" *Id.*

At least one district court in the Eleventh Circuit has declined to construe *Lanfear*'s holding as broadly as Defendants request. In *Ferguson v. BBVA Compass Bancshares, Inc.*, the court held that the plaintiffs were excused from exhausting the plan's claim procedures for their breach of fiduciary duty claim because (among other reasons) "neither the Plan

8

document nor the SPD suggests that BBVA's General Claims Procedure pertains to anything other than a claim for payment of vested benefits." No. 2:19-cv-1135-MHH, 2021 WL 662257, at *10 (N.D. Ala. Feb. 19, 2021). The court then explained that the claims procedure did not appear to apply to plaintiffs' "claim regarding mismanagement of plan investments because [the plaintiff] was not and is not seeking payment of plan benefits. [Plaintiffs] contend that BBVA's conduct caused the plan fund to lose millions of dollars of value, and they ask BBVA to restore that value for them and for all members of the plan." *Id.* at *8. The defendant then argued that under *Lanfear*, a claim for breach of fiduciary duty is by definition a claim for benefits. *Id.* at *10. The court rejected this argument, citing *Lanfear*'s reliance on the broad language in the Home Depot plan document that created an administrative remedy for breach of fiduciary duty claims. *Id.* at *11. In the course of its analysis, the court explained that there was another "clear factual distinction between *Lanfear* and" that case:

> In *Lanfear*, the plaintiffs had received benefit payments and were seeking additional benefit payments. As noted, neither [Plaintiffs have] filed a claim for benefits under the Plan. The plaintiffs ask the Court to restore the value allegedly depleted from the Plan fund because of BBVA's purported breach of fiduciary duty. No doubt the plaintiffs want the value of the fund to increase so that when the time comes to request benefits, there will be a more robust fund. But to date, neither plaintiff has requested a distribution of plan benefits.

*Id.* at *10 n.15.[2]  Similarly here, there is no indication that Plaintiff is seeking benefit

---

[2] *But see Bacon v. Stiefel Labs., Inc.*, 677 F. Supp. 2d 1331, 1338 (S.D. Fla. 2010) (rejecting plaintiffs' argument that exhaustion was not required in their breach of the fiduciary duty action because the plan's administrative procedures applied only to claims for benefits, and citing *Lanfear* for the proposition that the Eleventh Circuit has interpreted the phrase "claim for benefits" broadly); *Guididas v. Cmty. Nat'l Bank Corp.*, No. 8:10-cv-1410-T-30TBM, 2010 WL 3788740, at *3 (M.D. Fla. Sept. 24, 2010) ("And although the law is clear that claims for breaches of fiduciary duty constitute claims for 'benefits' (*see Lanfear*), Plaintiffs cannot

9

payments. Instead, Plaintiff is seeking an increase in the "value of the fund so when the time comes to request benefits, there will be a more robust fund." *Id.*

The *Ferguson* court's analysis is consistent with decisions from the Eleventh Circuit that consistently, albeit in the exhaustion context, recognize a distinction between plan-based claims for benefits and claims for breach of fiduciary duty.³ *See, e.g.*, *Perrino*, 209 F.3d at 1315 n.6 (11th Cir. 2000) (noting that the exhaustion requirement applies to the two distinct categories of ERISA claims: those arising under the substantive provisions of the statute and those arising from an ERISA plan); *Smith v. Williams*, 819 F. Supp. 2d 1264, 1269–70 (M.D. Fla. 2010) ("The Eleventh Circuit extends the obligation to exhaust administrative remedies to claims of breach of fiduciary duties imposed by ERISA itself as well as claims for benefits described in the Plan.") (citations omitted).

In addition, this analysis is consistent with the U.S. Supreme Court's discussion of ERISA claims. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254 (2008) ("Finally, our review of ERISA as a whole confirmed that §§ 502(a)(2) and 409 protect 'the financial integrity of the plan,' . . . whereas other provisions specifically address claims for benefits.") (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985));⁴ *see also Firestone*, 489 U.S. at 108 ("The discussion which follows is limited to the appropriate

---

meet the administrative exhaustion requirement under ERISA by merely making requests for individual benefits that are completely unrelated to their claims in this case.").

³ The Court does not intend to suggest that the exhaustion requirement does not apply to both types of claims, only that there is a distinction between the two types of claims.

⁴ The Supreme Court ultimately held that "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue*, 552 U.S. at 256. This holding does not alter *Russell*'s general recognition of a distinction between the two types of claims.

10

standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations. We express no view as to the appropriate standard of review for actions under other remedial provisions of ERISA.").[5]

Finally, the Court also notes that this distinction is consistent with ERISA's legislative history. *See 3 Legislative History of the Employee Retirement Income Security Act of 1974*, 4745 (1976) (remarks of Sen. Williams) ("In addition to being able to request the Secretary of Labor to bring suit on their behalf in cases where benefits are denied in violation of the act, individual participants and beneficiaries will also be able to bring suit in Federal court in such instances, as well as to obtain redress of fiduciary violations.").

Stated differently, the Court does not believe that, by holding that the monetary relief sought in a breach of fiduciary action qualifies as "benefits" for purposes of determining whether a plaintiff has standing to sue under ERISA and whether a plaintiff must exhaust administrative remedies, the Eleventh Circuit intended to conflate claims for benefits and claims for breach of fiduciary duty. To do so would effectively remove any distinctions between §§ 1132(a)(1)(B) and 1132(a)(2). *See* 29 U.S.C. § 1132(a)(1)(B) (stating that a civil

---

[5] The Court also emphasizes that even if a claim for breach of fiduciary duty qualified as a "claim for benefits" in the manner suggested by Defendants, the *Firestone* Court limited its holding to claims for benefits based on plan interpretations. 489 U.S. at 108. It is unclear whether the denial of Plaintiff's claim was based on an interpretation of the Plan. To the extent it was, Defendants may be entitled to arbitrary and capricious review of those interpretations, though the Eleventh Circuit has not spoken on the issue. *Compare Tussey v. ABB, Inc.*, 746 F.3d 327, 334–35 (8th Cir. 2014) (holding that the district court should have applied the arbitrary and capricious standard of review to the plan administrator's interpretation of the plan in action for breach of fiduciary duty) *and Tibble v. Edison Int'l*, 729 F.3d 1110, 1129 (9th Cir. 2013) (holding that *Firestone*'s framework "govern[s] issues of plan interpretation even when they arise outside the benefits context"), *vacated on other grounds by Tibble v. Edison Int'l*, 575 U.S. 523 (2015), *with John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Grp., Inc. Profit Sharing Plan*, 26 F.3d 360, 369 (2d Cir. 1994) ("[W]e decline to apply the arbitrary and capricious standard to the fiduciary conduct at issue here because this case does not involve a simple denial of benefits, over which the plan administrators have discretion.").

action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"); 29 U.S.C. § 1132(a)(2) (stating that a civil action may be brought by a participant or beneficiary "for appropriate relief under section 1109 of this title"). As Plaintiff argues (Doc. 38 at 9–10), to do so would violate the canons of statutory construction. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

Indeed, another district court in the Eleventh Circuit has declined to apply the arbitrary and capricious standard in analogous circumstances. In *Threadford v. Horizon Tr. & Inv. Mgmt., N.A.*, after the plaintiff bringing statutory claims for breach of fiduciary duty under ERISA exhausted her administrative remedies, the defendant filed a motion to "Set Schedule for Filing Administrative Record and Motions for Summary Judgment." No. 2:20-cv-750-RDP, 2021 WL 5105329, at *1 (N.D. Ala. Oct. 29, 2021). The court explained that it was "faced with two questions: (1) whether it should defer to the administrative committee's decision, and (2) whether it should allow discovery beyond the administrative record." *Id.* The Court then stated:

> As to the first question, the court applies the prudent person standard to Plaintiffs' claims. "[T]he law does not create a special presumption favoring ESOP fiduciaries. Rather, the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries[.]" *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 418-19 (2014). That *Dudenhoeffer* was examining the fiduciary's decision in the first instance, as opposed to an administrative committee's evaluation of that fiduciary's decision . . . is a distinction without a difference. The Supreme Court in *Dudenhoeffer* unambiguously rejected any special deference to ESOP fiduciaries (subject to one exception not applicable here). Such an approach is consistent with the Court's prior assertion "that

12

> the wholesale importation of the arbitrary and capricious standard into ERISA is unwarranted." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989).

*Id.* (select citations omitted). This analysis is consistent with the various district court decisions in this circuit analyzing ERISA claims for breach of fiduciary duty under § 1104's prudence standard, instead of treating the cases as appeals of an administrative committee's benefits determination to which deference is owed. *See, e.g.*, *Huang v. TriNet HR III, Inc.*, No. 8:20-cv-2293-VMC-TGW, 2023 WL 3092626, at *11 (M.D. Fla. Apr. 26, 2023) (granting defendants' motion for summary judgment on the basis that plaintiffs had failed to demonstrate that defendants breached their fiduciary duties); *Pizarro v. Home Depot, Inc.*, 634 F. Supp. 3d 1260, 1285–90 (N.D. Ga. 2022) (granting defendants' motion for summary judgment as plaintiffs had failed to establish evidence of loss causation in ERISA breach of fiduciary duty claim); *see also Baker Cty. Med. Servs., Inc. v. Brown & Brown, Inc.*, No. 6:04-cv-1633, 2005 WL 2063021, at *5 (M.D. Fla. Aug. 24, 2005) ("Thus, instead of applying the arbitrary and capricious standard of review, the Court must examine Brown's actions under the statutorily-mandated 'prudence' standard.").

As such, the Court finds that the arbitrary and capricious standard of review should not apply to this action, and as a result, Defendants' Motion to Determine Standard of Review should be denied.

### b. Motion for Protective Order

As discussed above, Defendants argue that under the terms of the Plan, an "arbitrary and capricious" standard applies to this Court's review. Thus, Defendants argue that there is no need for discovery in this matter, as the Court's review should be limited to the administrative record. *See Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139

(11th Cir. 1989) ("When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard . . . , the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made."); *see also Blake v. Union Camp Int'l Paper*, 622 F. App'x 853, 856 (11th Cir. 2015) ("In [an arbitrary and capricious review], the district court should limit discovery to the evidence that was before the plan administrator when it denied the claim for benefits."); *but see Waters v. AIG Claims, Inc.*, 338 F.R.D. 156, 166 (M.D. Ala. 2020) ("At step three, the scope of discovery includes 'evidence that was before the plan administrator when it denied the claim for benefits' and is not strictly limited to the administrative record.") (quoting *Blake*, 622 F. App'x at 856); *Johnston v. Aetna Life Ins. Co.*, 282 F. Supp. 3d 1303, 1311 (S.D. Fla. 2007) (noting that it "does not automatically follow that the proffered Administrative Record contains all of the evidence that the Plan Administrator had before it") (citations and quotations omitted).

As also discussed above, the Court does not believe that the arbitrary and capricious review should apply to this action. As a result, Defendants' motion for protective order should be denied on that basis. But even assuming the arbitrary and capricious standard will ultimately apply, the Court nonetheless finds that Defendants' request for a protective order should be denied. In cases reviewed under the arbitrary and capricious standard of review, courts have generally permitted limited discovery into certain areas, commonly referred to as the *Cerrito* factors, following *Cerrito v. Liberty Life Ins. Co.*, 209 F.R.D. 663, 664 (M.D. Fla. 2002). These factors are:

> [1] the exact nature of the information considered by the fiduciary making the decision; [2] whether the fiduciary was competent to evaluate the information in the administrative record; [3] how the fiduciary reached its decision; [4] whether given the nature of the information in the record, it was incumbent

> upon the fiduciary to seek outside technical assistance in reaching a "full and fair review" of the claim; and [5] whether a conflict of interest existed.

*Rhode v. CSX Transp., Inc.*, No. 3:20-CV-480-J-34MCR, 2020 WL 10457820, at *2 (M.D. Fla. Oct. 20, 2020) (citing *Cerrito*, 209 F.R.D. at 664).

Moreover, recent ERISA fiduciary duty cases have explained that a limitation to the administrative record is inappropriate in these fact-intensive cases. As one court explained:

> Certain information would likely assist the Court in determining whether Defendant more likely breached its duty. What was the rationale, if any, behind allowing recordkeepers to keep the interest as a form of payment? How closely, if at all, was this portion of payment monitored? Were there justifications for particularly high recordkeeping expenses relative to market practices? Communications that suggest as much? Were the Plan participants kept apprised routinely of the reasons for these fees as they changed from year to year? Was there even an awareness that these fees were allegedly too high? Is there expert testimony available that can dispel any notion of imprudence relative to what would be considered standard practices? The parties should engage in discovery to resolve these fact-intensive questions.

*Lopez v. Embry-Riddle Aeronautical Univ.*, No. 6:22-cv-1580-PGB-LHP, 2023 WL 7129858, at *10 (M.D. Fla. July 12, 2023); *see also id.* at *5 ("Allegations concerning the context or lack thereof behind excessively expensive fees are, in particular, among those that courts have ruled require discovery.") (citing *Kruger v. Novant Health, Inc.*, 131 F. Supp. 3d 470, 479 (M.D.N.C. 2015)); *Fleming v. Rollins, Inc.*, 655 F. Supp. 3d 1243, 1254–55 (N.D. Ga. 2023) ("Therefore, it would be inappropriate for the Court to weigh competing factual claims and judge Plaintiffs' allegations solely by the record compiled by the very Defendants whom Plaintiffs allege to have breached various fiduciary and ERISA duties, particularly at this early stage.") (citations omitted); *Huang v. TriNet HR III, Inc.*, No. 8:20-cv-2293-VMC-TGW, 2022 WL 93571, at *2 n.4 (M.D. Fla. Jan. 10, 2022) ("[T]he Court agrees with Plaintiffs that . . . no courts disagree that discovery must be taken on the actual process undertaken by a plan's fiduciaries.") (quotations omitted); *Santiago v. Univ. of Miami*, No.

15

1:20-cv-21784, 2021 WL 1173164, at *4 (S.D. Fla. Mar. 1, 2021) ("The question of 'whether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss.' Defendant's Motion to Dismiss is illustrative of the fact-intensive inquiry necessary to resolve this dispute, which is more appropriate on a motion for summary judgment.") (quoting *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1064 (M.D. Tenn. 2018)) (citations omitted).

As a result, the undersigned finds that, even if the arbitrary and capricious standard of review were to apply, the circumstances justify discovery beyond the administrative record. The Supreme Court has observed that "the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts," and, therefore, "the appropriate inquiry will necessarily be context specific." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022) (quoting *Dudenhoeffer*, 573 U.S. at 425 (2014)). When it is plausibly alleged "that the Defendant Investment Committee engaged in a flawed process such that it imprudently managed the Plan, . . . Plaintiffs should enjoy the benefits of discovery to further ascertain whether these allegations have legs." *Stengl*, 2023 WL 2633333, at *13; *see also Rzepkoski v. Nova Se. Univ., Inc.*, No. 22-61147-CIV, 2024 WL 808007, at *2 (S.D. Fla. Jan. 19, 2024) (denying motion for protective order and permitting discovery beyond the *Cerrito* factors); *Threadford*, 2021 WL 5105329, at *1 (denying request to limit discovery to the administrative record where it would "prove too thin for the court to undertake meaningful review").

Therefore, Defendants' motion for protective order should be denied. Nonetheless, the Court reminds the parties that the requirements of Rule 26(b)(1) apply to this action, and any discovery must be proportional to the needs of the case.

### c. Case Management Report

The parties submitted their Case Management Report, which reflected different proposed schedules by Plaintiff and Defendants (Doc. 27). In addition, the Case Management Report contained alternative positions on the length of trial, the scope of discovery, and whether special handling is appropriate. Each of these issues is contingent upon the outcome of the Court's ruling on Defendants' motions. Given the passage of time and the impact of the Court's holding, the Court recommends that the parties submit an Amended Case Management Report within fourteen days of the district judge's ruling on this Report and Recommendation. If, at that point, the parties remain unable to agree on these issues, the Court will schedule a preliminary pretrial conference.

Accordingly, it is hereby

 **RECOMMENDED**:

1. Defendants' Motion to Determine Standard of Review (Doc. 28) be DENIED.
2. Defendants' Motion for Protective Order (Doc. 30) be DENIED.
3. The parties submit an Amended Case Management Report within fourteen days of the Order ruling on this this Report and Recommendation.

**IT IS SO REPORTED** in Tampa, Florida, on July 17, 2024.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings

17

and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.