UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GRANT MOLLA,
on behalf of the Gerdau Ameristeel
US 401(k) Retirement Plan, himself,
and all others similarly situated,

    Plaintiff,
v.

GERDAU AMERISTEEL US, INC.,
and the GERDAU BENEFITS PLANS
ADMINISTRATIVE COMMITTEE,

    Defendants.

Case No.: 8:22-cv-02094-VMC

## DEFENDANT'S MOTION TO STRIKE OR, ALTERNATIVELY, TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant Gerdau Ameristeel US, Inc. ("Gerdau") moves to strike the Amended Complaint (Dkt. 59) because it modifies the Initial Complaint (Dkt. 1) in important ways not contemplated by the Court's Order granting Gerdau's first motion to dismiss (Dkt. 32, 49). Alternatively, Gerdau moves to dismiss the Amended Complaint under Rule 12(b)(6) because it exacerbates, rather than corrects, the deficiencies that warranted dismissal of the Initial Complaint.

The Amended Complaint fails to correct the deficiencies in the Initial Complaint because it still fails to adequately plead exhaustion with respect to the claims that Plaintiff ran through the Plan's administrative process. It exacerbates those deficiencies by, without Gerdau's permission or leave of court, pleading new and materially different claims; claims that Plaintiff *did not* run through the Plan's

administrative process, and thereby failed to exhaust administrative remedies.

**I.   Background.**

Plaintiff's Initial Complaint included ERISA claims for breach of fiduciary duty against Gerdau and the Gerdau Benefits Plans Administrative Committee (the "Committee") (Dkt. 1). Those claims alleged that the subject 401(k) Plan's fiduciaries breached their fiduciary duties in specific ways discussed in more detail below. Since Plaintiff did not exhaust the Plan's mandatory, pre-suit administrative claim procedure before filing suit, the Court stayed this case to allow Plaintiff to do so. (Dkt. 12, 13). Plaintiff initiated the administrative process by sending the Committee a claim letter on October 14, 2022. That letter described his claims as those set forth in the Initial Complaint. (Dkt. 28-2).

The Committee investigated and considered these claims, and generated a fulsome administrative record while doing so. It denied Plaintiff's administrative claim in a letter dated April 12, 2023 (Dkt. 28-3). As reflected in that letter, the Committee carefully considered, analyzed, and stated its decision with respect to each of the specific claims set forth in the Initial Complaint.

Plaintiff appealed the denial on June 8, 2023 (Dkt. 28-4). The Committee further investigated, considered, and then denied the appeal in another detailed letter dated October 6, 2023 (Dkt. 28-5). The denial of Plaintiff's appeal exhausted his administrative remedies with respect to the specific claims Plaintiff brought to the Committee; i.e. the specific claims in the Initial Complaint. The Court then

2

lifted the stay on November 16, 2023 (Dkt. 23, 24).

Defendants moved to dismiss Plaintiff's Initial Complaint for failure to state a plausible claim because he failed to adequately allege the exhaustion of administrative remedies (Dkt. 32). Plaintiff responded that it was unnecessary to amend the Complaint because the parties agreed he had exhausted administrative remedies (Dkt. 39 1-2). The Court granted Defendants' motion and gave Plaintiff fourteen days to amend, stating, "to proceed with this action, plaintiff must file an amended complaint that pleads exhaustion of administrative remedies." (Dkt. 49 11, "the Order").

Plaintiff then filed his Amended Complaint (Dkt. 59). Regarding exhaustion, it simply states: "Plaintiff has exhausted his administrative remedies." (Dkt. 59 ¶ 11). It does not identify the claims presented to the Committee, describe the Committee's decisions on those claims, or state which Committee decisions Plaintiff challenges here. Although the Amended Complaint fails to include these necessary allegations, it does include many new allegations and new claims not contemplated by the Order. Those new allegations and new claims are extensive and substantive.

Among other changes, the Amended Complaint: drops the Committee as a defendant[1] (*see* Dkt. 59 1); drops claims found in the Initial Complaint (*see, e.g.,*

---

[1] Plaintiff neglected to seek leave from the Court before dropping the Committee as a party. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *Zarate v. State Dept. of Health and Rehab. Servs.*, 347 F.Supp. 1004, 1006 (S.D. Fla.

3

Dkt. 1 ¶ 119-134); and substantively amends other claims found in the Initial Complaint (*see, e.g.*, Dkt. 59 ¶¶ 76, 78, 86, 104, 113, 121–123).

Most importantly, the Amended Complaint asserts several new, specific, and materially different claims that Plaintiff did not include in the Initial Complaint, and therefore did not present to the Committee during the administrative process (*see, e.g.,* Dkt. 59 ¶¶ 67, 88-89, 109-110, 118-119).[2] For example, and without limitation, the Amended Complaint includes entirely new claims that:

- Defendant used Plan assets to compensate Fidelity for services Fidelity ostensibly provides to other retirement plans Gerdau sponsors, or took those assets for Defendant's own benefits and to the detriment of the Plan participants. (Dkt. 59 ¶ 118-119);

- Defendant should have offered lower-cost K6 share class Fidelity funds on the Plan's investment menu[3] (Dkt. 59 ¶ 109-110);

- Defendant failed to disclose the amount of Fidelity's compensation on the Plan's Forms 5500 (Dkt. 59 ¶ 67);

- Defendant failed to negotiate with Fidelity to reduce its compensation (Dkt. 59 ¶ 88); and

- Defendant failed to explore alternative cost-structures for Fidelity's

---

1971) ("An amendment changing, adding or dropping parties requires leave of Court."). Gerdau raises this issue for completeness and as a matter of principle. However, for the sake of practicality, it does not oppose the Committee being dropped as a party to this lawsuit in light of Plaintiff's agreement, during the parties' meet and confer, that the absence of the Committee as a party does not affect any party's position or arguments on the standard of review or discovery issues pending before the Court.

[2] For complete clarity, Gerdau's past agreement that Plaintiff exhausted administrative remedies related to the claims Plaintiff asserted in Initial Complaint. That agreement remains in place as to those claims, to the extent they survive in the Amended Complaint. But Gerdau never agreed, and does not agree, that Plaintiff exhausted administrative remedies as to the new claims that were not included in the Initial Complaint and that, accordingly, he never presented to the Committee.

[3] Plaintiff's Initial Complaint made no mention of the K6 share class funds and instead alleged that the Plan should have included certain, specified, lower-cost Vanguard index funds. (*Compare* Dkt. 1 ¶ 119-134 *with* Dkt. 59 ¶ 109-10).

4


compensation (Dkt. 59 ¶ 89).

Plaintiff did not present these new claims to the Committee and thereby failed to exhaust administrative remedies with respect to these claims. The important result of this failure is that the Committee has not had an opportunity to investigate or consider these claims, to develop an administrative record about them, or to render a decision on those claims for this Court to review – under whatever standard of review the Court adopts[4].

## II. Argument

### A. The Court Should Strike the Amended Complaint.

The parties' meet and confer surfaced their good faith disagreement about whether the Order (Dkt. 49) allowed Plaintiff to substantively change the Amended Complaint, and most importantly assert new claims, apart from pleading facts demonstrating exhaustion. Gerdau concludes that it did not, in light of: the limited nature of Gerdau's motion to dismiss; Plaintiff's unwillingness to amend and his failure to request leave to amend[5]; the limited nature of the Order; and the Order's instruction that, "[t]herefore, to proceed with this action, plaintiff must file an amended complaint *that pleads exhaustion of administrative remedies*." (Dkt. 49 11, emphasis added.) Plaintiff concludes that it did because, notwithstanding these considerations, paragraph 3 of the "Ordered, Adjudged, and Decreed" section of

---

[4] Gerdau's objections (Dkt. 57) to the Report and Recommendations (Dkt. 52) on this issue (Dkt. 38) are pending.
[5] Plaintiff's ability to amend once as a matter of course expired long ago. Fed. R. Civ. P. 15(a)(1).

5

the Order does not expressly constrain or limit amendments to those related to exhaustion.

But it is the Court's Order; the Court will tell the parties what it intended. If the Court shares Gerdau's understanding of the Order, the Court should strike the Amended Complaint for the following reasons.

The Court's "power to strike a pleading, is inherent in [its] authority to enforce its orders and [to] ensure prompt disposition of legal actions." *State Exch. Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982) (citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31, (1962)). It is well-settled that a district court may strike an amended pleading that exceeds the scope of an order granting leave to amend. *See, e.g., Nolen v. Fairshare Vacation Owners Association*, 2023 WL 5622595, at *9 (11th Cir. Aug. 31, 2023) (affirming district court's order striking amended complaint that exceeded scope of leave to amend by adding new claims and factual theories); *The Cincinnati Ins. Co. v. Cochran*, 2006 WL 4495335, at *2-3 (11th Cir. Dec. 27, 2006) (affirming district court's decision to strike portion of amended complaint that added new claim and parties "its order did not contemplate"); *Kuenzig v. Kraft Global Foods, Inc.*, 2012 WL 366927, at *2-3 (M.D. Fla. Feb. 3, 2012) (striking additional claim and additional party from amended complaint where amendments exceeded the scope of the Court's order dismissing claims without prejudice); *Veritas Personnel Services, Inc. v. ADP Totalsource, Inc.*, 2019 WL 11506035, at *2 (S.D. Fla. Dec. 27, 2019) (striking

6

claims that exceeded scope of court's order allowing leave).

Assuming the Court shares Gerdau's understanding of the Order, the Court gave Plaintiff clear direction when it dismissed his Complaint: "to proceed with this action, plaintiff must file an amended complaint that pleads exhaustion of administrative remedied." (Dkt. 49 11.) It did not grant Plaintiff broad leave to change fundamental aspects of the case, add claims, assert new factual and legal theories, or change the parties. Instead, the Court gave Plaintiff limited leave to correct one deficiency; to allege facts establishing he exhausted his administrative remedies, to enable him to proceed with the claims he had already alleged. (*Id.*)

In response, Plaintiff added a single conclusory statement about exhaustion to his Amended Complaint (Dkt. 59 ¶ 11, "Plaintiff has exhausted his administrative remedies"), and then made a series of substantive changes far beyond the scope of the limited grant of leave. (*See e.g.* Dkt. 59 ¶¶ 67, 88–91, 94, 95, 99, 100, 109, 110, 118, 119 (asserting entirely new claims), ¶¶ 76, 78, 86, 104, 113, 121–123 (substantively amending existing claims), and Dkt. 1 ¶¶ 119–134 (abandoning claims and dropping party).) Doing so warrants the Court striking the Amended Complaint.

The Eleventh Circuit has explained that district courts act well within their authority when they strike pleadings under these circumstances. *Nolen*, 2023 WL 5622595, at *10. Like Plaintiff here, the plaintiffs in *Nolen* were given limited leave to correct specific factual deficiencies. *Id.* at *7 (dismissing claims for failing to

7

plead statutory conditions precedent with leave to amend). In response, the plaintiffs alleged "entirely new statutory claims" and "introduce[d] new factual theories" of liability. *Id.* at *9. The district court struck the amended complaint in *Nolen* in its entirety for exceeding the limited grant of leave and the Eleventh Circuit affirmed. *Id.* The Court should do the same here.

Denying this motion would reward Plaintiff for skipping over the proper procedure to try to make these changes to the Complaint. Since his deadline to amend as a matter of right long since passed, Plaintiff could have, and should have, sought leave to amend under Rule 15(a)(2), from Gerdau or the Court. Had he done so, Gerdau would have told him and the Court the same thing: that if Plaintiff wants to raise these new claims, he must first exhaust his administrative remedies, and Gerdau would agree to another stay to allow him to do so. Otherwise, Gerdau would have asked the Court to deny his request because – as discussed in more detail below – Plaintiff was trying to add claims about which he had failed to exhaust administrative remedies, so the amendments would be futile.

The Court should not allow Plaintiff to avoid this procedure and thereby deprive Gerdau of the corresponding opportunity to prevent Plaintiff from doing what he is attempting to do here; inject into this lawsuit claims concerning which he has not exhausted administrative remedies. If the Court strikes the Amended Complaint, it need not reach the issue of whether the Amended Complaint states a plausible claim. If it does not, then Gerdau asks the Court to dismiss the Amended

Complaint for that reason.

## B. The Amended Complaint Fails to Adequately Plead Exhaustion of Administrative Remedies as to Plaintiff's Initial Claims.

As the Court concluded in the Order, Plaintiff must exhaust administrative remedies before bringing breach of fiduciary duty claims under ERISA and, to state a plausible claim, must affirmatively plead exhaustion with respect to those claims. (Dkt. 49 7-10). Although the Order does not specify precisely *what* Plaintiff had to plead to satisfy this obligation, other authorities hold that he must allege *facts* demonstrating that he exhausted his administrative remedies. *See Variety Children's Hosp., Inc. v. Century Medical Health Plan, Inc.*, 57 F.3d 1040, 1042 (11th Cir. 1995) (affirming dismissal of ERISA benefits claim where the complaint "neither pleaded nor recited facts showing that [the plaintiff] had exhausted its administrative remedies under the plan" at issue).

The Amended Complaint does not meet this standard. Instead, it simply alleges, in a conclusory way, that: "Plaintiff has exhausted his administrative remedies." (Dkt. 59 ¶ 11). It does not allege facts: (1) identifying the claims Plaintiff presented to the Committee; (2) describing the Committee's decisions on those claims; or (3) identifying the Committee's decisions Plaintiff requests this Court to overturn, or why.

Because the Amended Complaint's bare, conclusory allegation about exhaustion provides no facts regarding the administrative process or its outcome,

it fails to adequately allege administrative exhaustion and should, again, be dismissed. *See Sanctuary Surgical Centre, Inc. v. United Healthcare, Inc.*, 2011 WL 2134534, at *8 (S.D. Fla. May 27, 2011) ("To properly plead exhaustion, plaintiffs must specify the action they took to exhaust their administrative remedies and the outcome of the action."); *Cousins v. United Healthcare, Inc.*, 2020 WL 1666628, at *3 (S.D. Fla. Apr. 3, 2020) ("In order to satisfy applicable pleading requirements, Plaintiff must set forth the claims for which he has exhausted his administrative remedies, and how he has done so.").

This is not a technicality. Plaintiff's failure to plead any facts regarding the claims he presented in the administrative process or the outcome of those claims is particularly problematic here for two reasons. First, as set forth in detail in Defendants' first Motion to Dismiss (Dkt. 32), Plaintiff's ERISA claims necessarily require the Court to review the Committee's denial of Plaintiff's claims under either a de novo or an arbitrary and capricious standard of review[6]. While Plaintiff may prefer to have this case proceed as though no administrative decision existed, that is not in keeping with the Court's role when deciding an ERISA claim that follows an administrative decision. *See Blankenship v. Metropolitan Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011) (outlining the six-step process for reviewing a plan administrator's benefits decision). Rather, Plaintiff's proper claim is to ask the

---

[6] Defendant contends the arbitrary and capricious standard of review applies. (*See* Dkt. 28, 46, 57). Should the Court ultimately disagree, it will still need to review the Committee's administrative decision under *some* standard.

10

Court *to review the plan administrator's decision* and explain why the Court should overturn it. If he does not plead what decisions he wants the Court to review or why those decisions are wrong, he fails to state a plausible claim.

Second, and relatedly, not identifying the claims he presented to the Committee or the outcome of those claims allows Plaintiff to plead in a conclusory way that he exhausted his administrative remedies when, in fact, he did not do so with respect to many of the claims set forth in the Amended Complaint. It is undisputed that Plaintiff's administrative claim included only the claims asserted in the Initial Complaint. (*See* Dkt. 12; 14–19; 23; 28). Plaintiff pursued the administrative process to its conclusion with respect to *those claims*, but has not done so with respect to any of his new claims. For example and without limitation, Plaintiff certainly cannot plead that he claimed to the Committee, as he does for the first time in the Amended Complaint, that the Plan's fiduciaries diverted revenue sharing funds from the Plan's participants to Fidelity and others (Dkt. 59 ¶¶ 118-119). Nor can he do so with respect to his new claim that the Plan should have included K6 share class funds rather than the 14 other funds the Amended Complaint identifies (*Id*. at ¶¶ 108-110).

Plaintiff does not and, indeed, cannot allege that he exhausted administrative remedies with regard to his several new claims. This is another reason to hold him to his obligation to plead facts demonstrating that he has exhausted administrative remedies and the outcome of that process. Plaintiff may

11

not "shortcut" the administrative process by pleading "generic allegations" which fail to allege what, if any, administrative steps he took to exhaust the mandatory administrative procedures for each claim. *GVB MD, LLC v. United Healthcare Insurance Company*, 2019 WL 5260274, at *3 (S.D. Fla. Aug. 14, 2019).

Accordingly, the Amended Complaint fails to correct the deficiencies that led to the dismissal of the Initial Complaint for failure to exhaust administrative remedies. The Court should dismiss the Amended Complaint for the same reason.

### C. **Plaintiff Failed to Exhaust Administrative Remedies with Regard to His New Claims**.

It is evident in light of the above that Plaintiff failed to exhaust the Plan's mandatory administrative procedures with respect to his new claims.[7] Because Plaintiff has not exhausted with regard to his new claims, these new claims must be dismissed. *See Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) (affirming dismissal of complaint for failure to exhaust administrative remedies).

The Eleventh Circuit has "repeatedly held that plaintiffs must exhaust their administrative remedies under a covered benefits plan prior to bringing an ERISA claim in federal court." *Variety Children's Hosp.*, 57 F.3d at 1040; *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 901 (11th Cir. 1990) (same); *see also Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1224 (11th Cir. 2008)

---

[7] The Plan's administrative process was clearly designed to address Plaintiff's new claims, and he admits that it was. Without repeating the analysis here, *see* Defendants' first motion to dismiss, "Plaintiff Had to Exhaust Administrative Remedies," Dkt. 32 5-8.

(applying exhaustion requirement to breach of fiduciary duty claims). The exhaustion requirement is "strictly enforce[d]" and is grounded in several important and compelling policy considerations, including "reduc[ing] the number of frivolous lawsuits under ERISA, minimiz[ing] the cost of dispute resolution, enhance[ing] the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow[ing] prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated." *Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000).

Allowing Plaintiff to proceed on claims he did not administratively exhaust runs directly counter to the Eleventh Circuit's strict exhaustion requirement and its underlying policy goals. *See CP Motion, Inc. v. Aetna Health, Inc.*, 2008 WL 4826093, at *5 (S.D. Fla. Nov. 4, 2008) ("[Plaintiff's] attempt to circumvent the appeals process . . . flies in the face of the policy considerations that underlie the exhaustion requirement."). Indeed, Plaintiff may not do *precisely* what he did here: present certain claims in the administrative process and then proceed on different claims in a subsequent court action. *See, e.g., Guididas v. Community Nat. Bank Corp.*, 2010 WL 3788740, at *3 (M.D. Fla. Sept. 24, 2010).

*Byars v. Coca-Cola Co.*, 2004 WL 1595399 (N.D. Ga. Mar. 18, 2004), is particularly instructive on this point. There, the district court dismissed certain ERISA claims from the plaintiffs' amended complaint for which plaintiffs failed to

13

exhaust administrative remedies prior to filing suit. The court rejected plaintiffs' argument "that appealing a denial of benefits under the terms of the plan suffices to exhaust the administrative review process for all purposes" as "wholly inconsistent with the purposes of the exhaustion requirement." *Id.* at *3.

The *Byars* court stated, "[w]ith such a minimalist exhaustion requirement, a litigant could appeal a denial of a benefits claim on an inadequate ground while holding back for federal court her more meritorious claims." *Id.* "Courts would be forced to hear claims wholly lacking in factual development; fiduciaries would be denied the ability to perform significant portions of their responsibilities; the costs of resolving ERISA disputes would increase; and most importantly, the courts would intervene in situations where, if administrative remedies had been utilized, judicial involvement would not have been necessary." *Id.* The court held that "Plaintiffs may not evade the exhaustion doctrine by reserving for litigation issues which could have been presented in the administrative review process." *Id.*

Similarly, Plaintiff may not bypass administrative review of his new claims by raising them for the first time in an amended pleading. For example, and as mentioned earlier, the Amended Complaint asserts – for the first time – that Gerdau should have should have offered certain, specific, lower-cost K6 share class *Fidelity* funds on the Plan's investment menu (Dkt. 59 ¶ 109-110). Plaintiff did not include this claim in the Initial Complaint and so did not present it to the Committee for consideration. Instead, Plaintiff claimed in the Initial Complaint

14

and to the Committee that the Plan should have offered certain, specific, lower-cost *Vanguard* funds.[8]

As a result, the Committee never had the opportunity to investigate Plaintiff's new claim regarding the K6 funds, to develop an administrative record on that issue, or render a decision. The same is true for each new claim asserted in the Amended Complaint. Allowing Plaintiff to proceed on claims he never presented to the Committee would fly in the face of the Eleventh Circuit's strict exhaustion requirement. It would also deprive Gerdau (and the Court) of the benefit of an administrative record regarding those claims and, more pointedly, an administrative decision on those claims for this Court to review, under whatever standard of review the Court decides to apply.

For all of these reasons, Plaintiff's failure to exhaust administrative remedies with regard to his new claims requires dismissal. *See Bickley*, 461 F.3d at 1328. The Eleventh Circuit's strict exhaustion requirement and its underlying policy considerations required Plaintiff to exhaust administrative remedies as to all of his claims before suing on them. Gerdau does not oppose another stay to allow Plaintiff to do so.

### III. Conclusion.

Wherefore, Gerdau asks this Court to enter an order striking or dismissing

---

[8] Plaintiff has now abandoned his *Vanguard* fund claim, rendering that aspect of the administrative record and the Committee's decision regarding the Vanguard funds of no further use in this proceeding. The same is true of certain other claims.

15

the Amended Complaint and awarding such other relief as the Court deems just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned hereby certifies that he conferred with counsel for the Plaintiff by phone on August 20, 2024 regarding this Motion. The parties were unable to agree on a resolution; Plaintiff opposes the relief requested.

*/s/ Brett J. Preston*
Brett J. Preston (FBN: 603716)
brett.preston@hwhlaw.com
michelle.armstrong@hwhlaw.com
Fred C. Marshall, II (FBN: 119284)
kip.marshall@hwhlaw.com
val.taylor@hwhlaw.com
Jacob Z. Coates (FBN: 1011769)
jacob.coates@hwhlaw.com
billie.wallis@hwhlaw.com
HILL WARD & HENDERSON, P.A.
101 E. Kennedy Blvd., Suite 3700
Tampa, Florida 33602
(813) 221-3900 (Telephone)
(813) 221-2900 (Facsimile)
*Attorneys for Defendant*