## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GRANT MOLLA,
on behalf of the Gerdau Ameristeel
US 401(k) Retirement Plan, himself,
and all others similarly situated,

   Plaintiff,      Case No. 8:22-cv-02094-VMC-SPF

v.

GERDAU AMERISTEEL US, INC.,

   Defendant.

_____/

### PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

  Grant Molla ("Plaintiff"), on behalf of the Gerdau Ameristeel US 401(k) Retirement Plan, ("Plan"), and Defendant, Gerdau Ameristeel US, Inc., ("Defendant"), entered into a Class Action Settlement (the "Settlement") which, subject to this Court's final approval, resolves all claims asserted in this ERISA lawsuit in exchange for a $1,500,000.00 cash payment to the Plan. It also requires Defendant to conduct a Request for Proposal ("RFP") to solicit bids for recordkeeping and other administrative services and obtain a detailed accounting of the Plan's float revenues.

  On March 10, 2025, this Court issued an Order preliminarily approving the Class Action Settlement [ECF 90.] On March 20, and 28, 2025, the Class Administrator sent the Court-approved Notice of Settlement to all 10,806

Settlement Class members on March 20, 2025. (*See* Exhibit A, Declaration from Settlement Administrator, American Legal Claims Services, ¶ 2) ("ALCS Decl.") The objection deadline is June 18, 2025. (*Id.* at ¶ 8.) The Settlement Administrator estimates that 99.41% of Settlement Class members received the Notice of Settlement. (*Id.* at ¶ 6.)  Thus far, not a single objection has been made. This demonstrates that, in accordance with the Court's preliminary approval Order, the settlement is fair, reasonable, and should be granted final approval.

The Settlement is the product of hard-fought litigation for more than 2.5 years, that included a robust pre-suit administrative remedies process during which many of the Plan's documents were produced, heavy motion practice; the retention of a knowledgeable and qualified expert witness; and arm's length negotiations between experienced ERISA counsel on both sides. The Settlement was only reached after a full day in-person mediation with Court-appointed mediator, Jack L. Townsend, Sr.

Benefits of the Settlement must be considered in the context of the risk that protracted litigation might lead to no recovery, or to a smaller recovery for Plaintiff and the Settlement Class. Relative to the stage of the litigation, the docket in this matter is fulsome, reflecting Defendant's vigorous efforts to defend the claims.

Class Counsel believes the Settlement is in the best interests of the Plan because the Settlement: (1) provides substantial monetary relief to restore alleged Plan losses; (2) requires Defendant to improve the Plan by issuing a Request for Proposal ("RFP") for recordkeeping services and  obtaining  a detailed accounting

of float revenues; (3) eliminates the risks and uncertainties of complex litigation; (4) eliminates the expense and length of time necessary to prosecute this action through trial,  and possible appeals; and (5) promotes the desirability of consummating the Settlement to provide prompt, effective relief to the Plan.

To ensure the Settlement's fairness, the proposed Settlement requires the parties to retain an independent fiduciary to act on the Plan's behalf to review the Settlement to determine whether to authorize Plaintiff's Released Claims on behalf of the Plan. (ECF 88, Ex 1 - Settlement Agreement § 2.) *See* Prohibited Transaction Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003).

Plaintiff respectfully requests the Court enter the Final Approval Order attached as Exhibit B, previously incorporated into the Settlement Agreement.

## I.    <u>LITIGATION AND SETTLEMENT HISTORY</u>.

### A.    <u>Pre-Suit Investigation</u>.

Prior to initiating litigation, Class Counsel conducted significant in-depth research and analysis into the claims and the anticipated defenses of those claims. Class Counsel retained and worked with an industry expert during the pre-suit investigation stage. Class Counsel also reviewed thousands of pages of publicly available documents and documents in Plaintiff's possession.

**B.**     **Initiation of Lawsuit and Exhaustion of Administrative Remedies.**

On September 9, 2022, Plaintiff filed a class action Complaint against Defendant alleging breach of fiduciary duties in administering the Plan under the Employee Retirement Income Security Act of 1974 ("ERISA".) [ECF 1.]

Upon receipt of the Complaint, Defendant argued the Plan required Plaintiff to exhaust pre-suit administrative remedies before litigating. Plaintiff believed exhaustion of those remedies would have been futile and excusable. Rather than burden the Court with extensive briefing and procedural matters, Plaintiff worked cooperatively with Defendant to exhaust any ostensible administrative remedies. The Parties filed a Joint Motion to Stay on September 30, 2022 [ECF 12] which the Court granted on October 1, 2022.  Per the Court's Order, the parties filed status reports every sixty days.

On October 14, 2022, Plaintiff submitted an administrative claim pursuant to the Plan's administrative claims review process.  Plaintiff requested certain Plan documents. Defendant produced a large volume of documents relevant to Plaintiff's claims, including, inter alia: (1) the Plan's committee charter; (2) investment policy statement, (3) the Plan Document, Summary Plan Description, and an array of Plan amendments, (4) Plan Committee meeting minutes, (5) investment consulting reports, (6) recordkeeper reports, (7) disclosures to the Plan and its participants, and (8) accounting reports. Class Counsel scrutinized the documents produced. On October 6, 2023, the administrative review process

concluded, enabling Plaintiff to use information obtained through the administrative process to corroborate and refine his allegations.

### C.    **Motion Practice, and Discovery.**

The parties filed a Joint Motion asking the Court to lift the stay on November 13, 2023 [ECF 23] which the Court granted on November 16, 2023 [ECF 24]. The parties then filed a Case Management Report on November 28, 2023. [ECF 27].

On December 1, 2023, Defendant filed its Motion to Determine the Standard of Review and Motion for Protective Order [ECFs 28 and 30.] Defendant's Motion for Protective Order sought to limit Plaintiff's discovery and the evidentiary record in the case to the documents produced by Defendant in the administrative review process. Defendant's Motion to Determine the Standard of Review asked the Court to apply the [stricter] arbitrary and capricious standard of review to this action. [ECF 3.] Six days later, on December 7, 2023, Defendant filed its Motion to Dismiss. [ECF 32.]

On January 19, 2024, Plaintiff filed his opposition to each of Defendant's motions. [ECFs 38, 39, 40.] The oppositions were incredibly important because Defendant was attempting to curtail Plaintiff's discovery and limit the Court's review to a much higher standard of scrutiny. If any of Defendant's three motions were granted, it would have been very difficult for the case to have been resolved in a fair and effective manner.

On February 2, 2024, Defendant filed replies in support of its motions. [ECFs 46, 47.]

The Court referred Defendant's Motion to Determine the Standard of Review and Motion for Protective Order to Magistrate Judge Sean P. Flynn for the issuance of a Report and Recommendation. [ECF 31.] On July 17, 2024, Magistrate Judge Flynn issued a well-reasoned Report and Recommendation recommending the Court deny both motions. [ECF 52.]

Defendant filed its Objection to Magistrate Judge Flynn's Report and Recommendation on August 9, 2024. [ECF 57.] That same day, Plaintiff also filed his First Amended Complaint. [ECF 59.] On August 22, 2024, Plaintiff filed his response to Defendant's Objection to Magistrate Judge Flynn's Report and Recommendation. [ECF 60.] The next day, August 23, 2024, Defendant filed its Motion to Strike, or alternatively, Motion to Dismiss Plaintiff's First Amended Complaint. [ECF 61.]

On September 20, 2024, the Court accepted and adopted Magistrate Judge Flynn's Report and Recommendation, overruled Defendant's Objection, and denied Defendant's Motion to Determine the Standard of Review and Motion for Protective Order. [ECF 67.] On that same day, Plaintiff filed his opposition to Defendant's second Motion to Dismiss. [ECF 69.] Defendant filed its reply in support of its second Motion to Dismiss on October 4, 2024. [ECF 72.]

On October 4, 2024, the Parties filed an updated Case Management Report. [ECF 73.] On October 29, 2024, the Court entered its Scheduling Order. [ECF 74.]

**D. <u>Settlement Negotiations and Mediation with Jack L. Townsend.</u>**

After the Court denied Defendant's Motion to Determine the Standard of Review and Motion for Protective Order, the parties were better positioned to discuss the potential trajectory of the litigation. The parties determined a mediation before depositions and additional discovery to be the most practical approach, as both sides were equally well educated as to the strengths, weaknesses and economics of their respective case.

On February 4, 2025, the parties attended a full-day mediation session with Mr. Jack Townsend, the Court's appointed mediator. At the conclusion of a long day of adversarial and often contentious negotiations, the parties reached settlement in principle. On February 7, 2025, the parties notified the Court. For the next 30 days the parties memorialized the finer details of the Settlement. On February 10, 2025, Plaintiff filed his Unopposed Motion for Preliminary Approval. [ECF 88.] On March 10, 2025, the Court issued an order granting preliminary approval of the Class Action Settlement [ECF 90], for which the parties now seek final approval.

**E. <u>The Settlement Agreement</u>.**

**1. <u>Benefits to Settlement Class Members</u>.**

The Settlement provides for a monetary payment of $1,500,000.00 to the Settlement Fund. Attorney's fees and costs, independent fiduciary fees and costs of notice and settlement administration will be deducted. [ECF 88-1, Settlement

Agreement § 3.1.] The remaining "Net Settlement Amount" will be distributed by the Plan to Settlement Class members pursuant to the proposed Plan of Allocation. (*Id.*, § 3.2(b).)

For Class Members who have Plan accounts on the date of the distribution, the distribution will be made automatically pursuant to applicable Plan terms. No claim form is required. The Settlement Administrator shall promptly notify Class Counsel as to the date(s) and amounts(s) of said allocation(s) made to Class Members who are Current Participants. For Former Participants, their distributions will be made by checks. No Former Participant whose entitlement to payment pursuant to the Plan of Allocation would be otherwise less than five dollars ($5.00) shall receive any payment. The Settlement Administrator shall be responsible for distributing the Settlement proceeds. No claim forms will be required of Former Participants either. (*Id., Exhibit C – Plan of Allocation*, ¶¶ E-F.)

The Settlement Administrator will be American Legal Claims Services, LLC. (*Id.* § 1.39.) The Net Settlement Amount shall be distributed by the Plan to Settlement Class Members in accordance with the proposed Plan of Allocation (or as modified by the Court and agreed by the parties). Any Net Settlement Amount remaining after the Settlement distributions are made shall be returned to the Plan to defray Plan administrative expenses; there will be no *cy pres* payment or reversion to Defendant. (*Id.* § 3.4.)

## 2.    __Retention of an Independent Fiduciary__.

As required by Prohibited Transaction Class Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), as amended 75 FR 33830 (June 15, 2010), the Settlement provides that an independent fiduciary will review the Settlement and provide, if appropriate, the authorization required by that Exemption on behalf of the Plan. (*Id.* § 2.9(b).) Plaintiff has retained Fiduciary Counselors Inc., whose sole loyalty will be to the Plan.  Fiduciary Counselors will evaluate the Settlement for the Plan and opine whether it is (1) reasonable in light of the litigation risk and the value of the claims, (2) consistent with an arm's length agreement, and (3) not part of an agreement or arrangement to benefit a party in interest.

## 3.    __Attorneys' Fees and Costs__.

Any Attorneys' fees and costs the Court may award will be paid from the Gross Settlement Fund. (*Id.* § 3.1(j).) Class Counsel will petition the Court for an award of attorneys' fees not to exceed one-third (33.3%) of the Gross Settlement Amount, plus reimbursement of reasonable expenses. (*Id.* § 7.1(a)-(b).) The Settlement is not contingent on any such fees, or expense reimbursements being awarded. Thus, if the Court denies the petition for Attorneys' fees and expense reimbursements, in whole or part, such denial will have no impact on the validity or enforceability of the Settlement.

## 4.    __Release of Claims__.

Under the terms of the Settlement, Plaintiff and the Settlement Class (on behalf of themselves, their current and former beneficiaries, their representatives,

and successors-in-interest), and the Plan (by and through the Independent Fiduciary, pursuant to Section 2.9), absolutely and unconditionally release and forever discharge the Gerdau Releasees from each and every released Claim that Plaintiff, the Settlement Class, or the Plan directly, indirectly, derivatively, or in any other capacity ever had, now have or hereafter may have, except that the release under this Section 5.1 shall not include claims relating to the covenants or obligations set forth in the Agreement.

**5.    Notice and Objections.**

Pursuant to Federal Rules of Civil Procedure 23(e)(1) and (e)(5), the Settlement provides for notice to the Class and an opportunity for Settlement Class members to object to the final approval of the Settlement. In its Order granting preliminary approval, the Court determined the proposed Notice to the Class satisfied the due process and other requirements of Rule 23(e)(1),(e)(5).  The Court-approved Notice was mailed to the Class on March 20 and 28, 2025.  The objection deadline is June 18, 2025.  To date, there have been no objections to the Settlement.

## II.    **MEMORANDUM OF LAW.**

### A.    **Legal Standard.**

Settlements are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *Miller v. Rep. Nat'l. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977).  A district court, in reviewing a proposed settlement of a class action case must find

that there has been no fraud or collusion between the parties in arriving at the proposed settlement and that the proposed settlement is "fair, adequate and reasonable." *See id.* at 428; *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); Rule 23(e)(2).

The Eleventh Circuit has previously outlined several factors that a court must consider in its determination of whether a proposed class-action settlement is fair, adequate, and reasonable: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett*, 737 F.2d at 986. In weighing these factors, the Court may "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," Courts are often "hesitant to substitute its own judgment for that of counsel." *See Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011) (*citing Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

For the reasons discussed below, the application of the recently amended Rule 23(e) factors, as well as the analogous *Bennett* factors, unquestionably demonstrates that the Settlement is fair, adequate, and reasonable. *See also Santiago v. Univ. of Miami,* 1:20-CV-21784 (ECF 65) (S.D. Fla. April 7, 2022 (granting final approval of similar ERISA 403(b) class action settlement), and

*Angelo v. NCL Corporation LTD, et al.,* 1:22-cv-22962-AHS (ECF 56) (granting final approval of similar ERISA 401(k) class action settlement.)

### B. **The Class Has Already Been Certified on a Preliminary Basis.**

Beginning with the issue of class certification, the Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(1). Since the Court's Preliminary Approval Order, no objections have been received. Thus, there is no reason to re-visit the Court's Preliminary Approval Order.

### C. **All Relevant *Bennett* Factors Weigh in Favor of the Court Granting Final Approval of the Parties' Class Action Settlement.**

#### 1. **Likelihood of Success at Trial and Range of Possible Recovery (*Bennett* Factors 1–3).**

The first three *Bennett* factors which include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable—are unquestionably satisfied by the Settlement,  although "[a] determination of a reasonable settlement is not susceptible to a precise equation yielding a particular sum" *In re NetBank, Inc., Sec. Litig.*, No. 07-2298, 2011 WL 13176646, at *4 (N.D. Ga. Nov. 9, 2011).

The Settlement represents an outstanding result considering both the strength of Plaintiff's claims and the strength of Defendant's defenses. *See also Bennett*, 737 F.2d at 987 (citation omitted) ("[A] just result is often no more than

an arbitrary point between competing notions of reasonableness.") The Settlement requires Defendant to pay $1,500,000.00 for the benefit of the Settlement Class. Equally important, it requires Defendant to take proactive measures to ensure the Plan's expenses are controlled and the Plan obtains a detailed accounting of its float earnings.

Moreover, just the $1,500,000.00 monetary recovery falls well within the range of reasonableness as it is a substantial percentage of the estimated recovery Class Counsel estimate could be recovered if successful in litigating the case through trial. *See, e.g., Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988); (*see also* Exhibit B – Edelman Dec., to Class Counsel's Motion for Attorneys' Fees and Costs, ¶ 24.) Absent approval of the Settlement, continued litigation would be complex and would require the investment of considerable resources by both parties and the Court. Liability is contested and both sides would face considerable liability risks should the litigation proceed. In contrast to the complexity, delay, risk, and expense of continued litigation, the Settlement will produce certain, and substantial recovery for the Settlement Class. For instance, a lawsuit involving similar issues resulted in a trial verdict for defendants on all claims. See, e.g., *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 317 (S.D.N.Y. 2018). Following appeals, the Second Circuit affirmed in part and reversed in part the trial judgment. The initial complaint in *Sacerdote* was filed on August 9, 2016. *Sacerdote* has been pending for nearly ten years and the parties are gearing up for another trial. As *Sacerdote* clearly illustrates, Plaintiff faced a substantial risk this

case could be litigated for years, at significant expense, only to lose at trial and on appeal, recovering nothing for the Settlement Class.

In sum, under the Settlement, the Settlement Class will quickly obtain $1,500,000 (roughly 42% of alleged loss to the Plan), without any delay. Defendant is taking actions which are anticipated to lower costs and improve future returns for Plan participants. For these reasons, the first three *Bennett* factors thus support final approval by the Court of the Settlement.

> ### 2.    Complexity, Expense, and Duration of the Litigation (*Bennett* Factor 4), and Stage of Proceedings at Which Settlement Was Achieved (*Bennett* Factor 6).

The fourth *Bennett* factor, which requires an analysis of the complexity, expense, and duration of the litigation, also favors the Court granting final approval of the Settlement. So does the sixth factor, the stage of the proceeding at which the settlement was achieved. Because the two are intertwined, they are analyzed together below.

"The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Gevaerts v. TD Bank, N.A.*, No. 14-20744, 2015 WL 12533121, at *5 (S.D. Fla. Aug. 4, 2015). The Settlement was the product of hard-fought litigation, which included substantial motion practice, pre-suit investigative discovery, an extensive and lengthy administrative exhaustion process that resulted in the production of

thousands of pages of documents. Class Counsel consulted with an expert throughout the litigation.

All counsel involved in the negotiations are experienced in handling class actions, complex ERISA litigation, and are demonstrably capable of assessing the strengths and weaknesses of their respective positions. Where there "is no evidence of any kind that the Settling Parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement ... counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005). Here, experienced counsel's support of the Settlement is entitled to considerable weight. *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983). Therefore, the fourth and sixth *Bennett* factors strongly supports approval of the Settlement.

### 3.   Substance and Amount of Opposition to Settlement (*Bennett* Factor 5).

Another *Bennett* factor Courts typically consider is the substance and amount of opposition to the settlement—the fifth *Bennett* factor. Because there is no current opposition to the Settlement, this hurdle is easily cleared.   "[t]he reaction of the class is an important factor." *Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005); *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014).  The Settlement Administrator provided Notice of the Settlement to over 10,000 Settlement Class members. No

objections have been received. Thus, this *Bennett* factor supports the Court granting final approval of the Settlement. *See, e.g., Lipuma*., 406 F. at 1319; *see also Burrows v. Purchasing Power, LLC*, No. 12-22800, 2013 WL 10167232, at *7 (S.D. Fla. Oct. 7, 2013) (granting final approval of class action settlement, noting "[n]o members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition.").

### D. **In addition to the *Bennett* Factors, All Rule 23(e) Factors Weigh in Favor of the Court Granting Final Approval of the Parties' Class Action Settlement.**

Next, pursuant to 2018 amendments to Rule 23, when analyzing whether to grant final approval of a class action settlement, courts should assess whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

### 1. **The Class Representatives and Class Counsel Have Adequately Represented the Class.**

The central component of representative adequacy is the absence of conflicts of interest between the named representative and the class. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997). Here, the Class Representative, Mr. Grant Molla, is a participant in the Plan and allegedly suffered a loss because of Defendant's fiduciary breaches. Like other Settlement Class members, the Class Representative seeks to maximize the recovery to the Settlement Class and

15

improve the administration of the Plan prospectively. He has no interests antagonistic to the claims of any Settlement Class member. Mr. Molla's interests are fully aligned with the interests of the Settlement Class.

Furthermore, Mr. Molla remains willing and able to take the required role in the litigation to protect the interests of those he seeks to represent. As one district court has noted, it is sufficient for an ERISA case if a proposed class representative "understands that she had a retirement plan and believes that defendants failed to protect the money in the Plan" and, further, that she "understands her obligation to assist her attorneys and testify." *Rankin v. Rots*, 220 F.R.D. 511, 521 (E.D. Mich. 2004). Plaintiff understands and has demonstrated his commitment to this case from the onset, doing whatever Class Counsel requested from him.

Finally, as discussed further below, Plaintiff retained counsel with significant experience in ERISA class actions. (*See, e.g.,* Exhibits B and C to Class Counsel's Motion for Attorneys' Fees and Costs.) When, as here, the Settlement Class is represented by counsel who have significant experience in class-action litigation and settlements, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *See, e.g., Hugo on behalf of Bank Atlantic Bancorp, Inc. v. Levan,* No. 08-61018-CIV, 2011 WL 13173025, at *10 (S.D. Fla. July 12, 2011) ("The view of the attorneys actively conducting the litigation regarding the appropriateness of a proposed settlement is "entitled to significant

weight"); *see also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 635 (6th Cir. 2007) ("In deciding whether the settlement is fair, reasonable, and adequate, the Court must look to the opinions of class counsel and class representatives."). Simply put, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2.    The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before a Neutral Mediator.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement was reached after a full day of adversarial negotiations through the Court's appointed mediator, Jack L. Townsend.  All counsel present for negotiations are experienced in handling class action litigation and are capable of assessing the strengths and weaknesses of their respective positions.[1] Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

---

[1] *Pierre-Val v. Buccaneers Ltd. P'ship,* No. 8:14-cv-01182-CEH, 2015 WL 3776918, at *2 (M.D. Fla. June 17, 2015) ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks").

### 3.    The Settlement Provides Adequate Relief to Class Members.

The relief to Settlement Class members satisfies the third Rule 23(e)(2) factor. The $1,500,000.00 secured by Plaintiff for the Settlement Class members falls well within the range of reasonableness in this case. It is equal to approximately 42% of the reasonable total estimated recovery Class Counsel believe could be recovered if complete success at trial was obtained.

Continuing to litigate would be risky and expensive. The risk of Plaintiff being unable to establish liability would be real because of the numerous defenses asserted by Defendant, including at both summary judgment and trial. Each of these remaining phases of the litigation pose serious risks, which the Settlement allows Plaintiff and the Settlement Class to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig*., 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Through this Settlement, the Settlement Class can quickly realize a substantial portion of the Plan's losses and secure prospective structural changes that will inure to the benefit of all Settlement Class members. Thus, the third Rule 23(e)(2) factor is satisfied.

### 4.    The Settlement Treats Class Members Equitably.

Finally, the last Rule 23(e)(2) factor is satisfied because the Settlement treats Settlement Class members equitably relative to each other. The detailed "Plan of Allocation" [Dkt. 88-1, Ex. C], which Plaintiff incorporates by reference,

provides each Settlement Class Member will receive a *pro rata* share of the $1,500,000.00. This is the most common approach in ERISA class action settlements and has been approved countless times by sister courts across the country. Thus, the final Rule 23(e)(2) factor is met.

**WHEREFORE**, Plaintiff respectfully moves this Court to grant this Motion.

## Certificate of Compliance with Local Rule 7.1

Pursuant to Local Rule 3.1(g) of the District Court for the Middle District of Florida, Plaintiff's Counsel certifies that, consistent with the Parties' Settlement Agreement, Defendant does not oppose the Court granting final approval of the Settlement.

Dated this 16th day of May 2025.

Respectfully submitted,
/s/ *Marc R. Edelman*
**MARC. R. EDELMAN**
Florida Bar No. 0096342
**MORGAN & MORGAN, P.A.**
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: 813-577-4722
Facsimile: 813-257-0572
Medelman@forthepeople.com

**BRANDON J. HILL**
Florida Bar Number: 0037061
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
**LUIS A. CABASSA**
Florida Bar Number: 053643
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300

Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
bhill@wfclaw.com
aheystek@wfclaw.com
lcabassa@wfclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May, 2025, I caused a true and correct

copy of the foregoing to be filed using the Clerk of Court's CM/ECF system, which

then caused a notice of electronic filing on all Counsel of Record.

*/s/Marc R. Edelman*
**MARC R. EDELMAN**